493 A.2d 385

**Joanne R. FALISE**

v.

**Frank J. FALISE.**

No. 1368, Sept. Term, 1984.

Court of Special Appeals of Maryland.

June 10, 1985.

Richard William Winelander, Baltimore, for appellant.

Richard Andrew Sargent, Baltimore (Bruce Ezrine, Baltimore, on the brief), for appellee.

Argued before MOYLAN, ALPERT and ROBERT M. BELL, JJ.

ALPERT, Judge.

The instant appeal arises from yet another "marital property" dispute compounded by separation, a separation agreement, reconciliation, and post separation (pre-reconciliation) property acquisition. The parties, appellant Joanne R. Falise and appellee Frank J. Falise, were married in September of 1967. The couple had one child, Samuel, born November 8, 1968. Some time thereafter, marital difficulties arose and the couple separated in July of 1975. This separation was memorialized by a Separation Agreement dated September 12, 1975, which cited "unreconcilable differences" as the reason for the separation. Mrs. Falise was granted custody of the couple's minor son and she and Samuel moved to the state of Vermont. The Separation Agreement contained various terms adjusting property and monetary matters between the parties.

During the tenure of the couple's first separation, Mr. Falise purchased a tract of land in Howard County for $18,000.00, $5,000.00 of which was paid in cash; the balance of $13,000.00 was secured by a mortgage. The $5,000.00 downpayment consisted partially of money received by Mr. Falise pursuant to the Separation Agreement and partially from his earnings. Title was placed in his name alone.

During December of 1977, the parties began discussing a possible reconciliation and some time thereafter Mrs. Falise returned to Maryland with their son. At first, the Falises resided with his mother, at which time they began to plan the construction of a home on the Howard County property. The parties jointly selected plans and a builder. When the parties received permanent financing for the house, a new deed was issued in which the property was titled in both

names as tenants by the entirety. The deed and mortgage were dated December 11, 1978.

The Falises moved into their new home in October of 1979 and resided there as a family unit until Mrs. Falise moved out on February 20, 1981.

Mr. Falise subsequently filed divorce proceedings in the Circuit Court for Howard County alleging both desertion and adultery; Mrs. Falise filed a cross bill of complaint, alleging constructive desertion, voluntary separation, adultery and a two-year separation. The trial judge granted a Divorce A Vinculo Matrimonii on behalf of the husband, finding that Mr. Falise had adequately proven desertion and adultery by Mrs. Falise. Custody of the parties' son was awarded to Mr. Falise.

The court found that Mrs. Falise removed her personal property when she left the Howard County home. The parties were in disagreement as to whether the house itself was marital property and what effect the Separation Agreement[1] had on this determination. Mrs. Falise essentially argued that the home was presumed to be a gift to her premised upon its titling as tenants by the entirety and that the Separation Agreement was inoperative because it was

---

1. Paragraph 13 of the Agreement is essentially a waiver of ownership provision as to property then held or after-acquired. In full, it provides:

 Except for the rights provided for in this Agreement, the parties, for themselves and their respective heirs, personal representatives and assigns, do hereby mutually release, waive, surrender and assign unto the other, his or her heirs, personal representatives and assigns, all rights, title, interest and claims which said parties might now have or may hereafter have as the husband, wife, widower, widow, next of kin, successor or otherwise, in and to any property, real or personal, that either of said parties may own or hereafter acquire, or in respect of which either has or may hereafter have any right, title, claim or interest, direct or indirect, including any rights of dower, statutory thirds, halves or legal shares and widow's or widower's rights, or to participate in any way in the enjoyment or distribution of any of the real or personal estate of which the other may be possessed at the time of his or her death, or any right to receive any legal right or interest whatsoever thereon, including the right to administer upon the estate of the other.

abrogated by virtue of their reconciliation. The trial judge disagreed with both contentions and found that the home was marital in part and nonmarital in part, but that "both monetary and non-monetary contributions of [Mrs. Falise were] nominal." After valuing the property, the judge made a monetary award in favor of Mrs. Falise:

> Not only was [Mrs. Falise's] contribution small, but it was also short in duration. The mortgage was dated December 4, 1978; assuming that the first payment was January 1, 1979, the contribution, what there was of it, lasted only until February 20, 1981 (some twenty-six (26) months).

> The Court is of the opinion that the short period of time the parties were together along with the small monetary and non-monetary contributions made by [Mrs. Falise] toward the real property, requires a monetary award of $2,500.00 as her interest in the real estate.

The parties also disputed the value of a life insurance policy and investment plans. As to these items, the court held that in light of "the small monetary and non-monetary contribution of [Mrs. Falise], together with the short time the parties were reconciled requires an award of $500."

Mrs. Falise appeals from this Order and raises three issues:

I. Whether the trial court erred in determining that the 1975 Separation Agreement was operable and relevant to the categorization of property as marital versus nonmarital?

II. Whether the trial court erred in making a $2500 monetary award as "her interest in the real estate"?

III. Whether the trial court erred in making a $500 monetary award to the wife representing her interest in a life insurance policy and investment accounts?

Because we answer in the affirmative, we must reverse and remand the case for further proceedings.

## I.

■ The first issue raised is whether the parties' 1978 reconciliation served to abrogate the 1975 Separation Agreement executed by the Falises. The only real significance of the Agreement is in the relationship of Paragraph 13 (reprinted in footnote 1 *supra*) to the tract of land in Howard County upon which the Falises constructed the home at issue, *i.e.*, whether the tract itself constitutes marital or nonmarital property. That significance dissipates like a puff of smoke because even if the separation agreement was not abrogated, the unimproved lot of ground acquired by appellant during the separation must be classified as "marital" and not as "nonmarital" property.

It is clear that by paragraph 13 of the agreement the parties intended to relinquish any and all right, title and interest in and to the other's property, then owned or thereafter acquired. We doubt that the subject agreement could affect the status of something which is neither an interest in real or personal property, *i.e.*, marital property. Marital property is merely a term created by the legislature to describe the status of property acquired during the marriage, however titled (as defined in Md.Family Law Code Ann. § 8–201(e) (1984)), title to which may have given rise to a potential inequity, upon dissolution of the marriage. That inequity, conceptually, may be corrected via a different legislative creature called the "monetary award." Thus, the only function of "marital property" is to form a base for a "monetary award." The legislature never intended that either spouse could have a legal *interest* in the "marital property" of the other since it merely intended to cure the title created inequity through the issuance of a "monetary award."

■ The Supreme Court of New Jersey in *Smith v. Smith*, 72 N.J. 350, 371 A.2d 1, 5–6 (1977), in determining whether equitable distribution was foreclosed by prior agreement, opined:

The husband further argues that Paragraph Tenth of the agreement, by which each spouse released all rights in the property of the other, operates as a binding relinquishment of any right to equitable distribution. It is settled law that the scope of a release is determined by the intent of the parties, and that in general, claims arising after the date of delivery of the instrument are not covered by it unless explicitly mentioned, since they would not appear to have been within the contemplation of the parties. *Bilotti v. Accurate Forming Corp.*, 39 N.J. 184, 203–05, 188 A.2d 24 (1963). At the time Mr. and Mrs. Smith signed their agreement, courts had no power to make an equitable distribution of marital assets and neither party had any rights, inchoate or otherwise, in the individually owned property of the other, aside from dower, curtesy and right of quarantine. *Calame v. Calame*, [25 N.J.Eq. 548, 549 (E. & A. 1874)]. We agree with Mrs. Smith that she cannot be regarded as having released a right which she did not have and could not fairly have anticipated.

*See also Head v. Head*, 759 F.2d 1172 (4th Cir.1985) (reprinted in *Daily Record*, May 13, 1984), wherein the United States Court of Appeals for the Fourth Circuit, in analyzing the Marital Property Act, recognized that "the less pecunious spouse in Maryland did not have a property interest in property to which the wealthier spouse held title. At most the less pecunious spouse had but an intangible expectancy in a share of the marital property's total cash value." *Id.* slip op. at 1174 (*Daily Record*, May 13, 1985 at 5).

In order to exclude property "by valid agreement" from the reach of a monetary award, we believe that the parties must specifically provide that the subject property must be considered "non marital" or in some other terms specifically exclude the property from the scope of the Marital Property Act.

## II.

Although the trial judge was clearly empowered to grant a monetary award[2] pursuant to Md.Cts. & Jud.Proc.Code Ann. § 3-6A-05 (1984 Repl.Vol.) (repealed), the procedure he followed and the result he reached were not altogether correct. A three-step procedure must be followed when the trial judge makes an equitable distribution of marital property. "First, the chancellor must categorize all property owned by the parties as marital or nonmarital. Next, the value of the marital property must be determined. Finally, the chancellor may make a monetary award as an adjustment of the parties' equities and rights concerning marital property." *Sharp v. Sharp*, 58 Md.App. 386, 394, 473 A.2d 499 (1984) (citing *Harper v. Harper*, 294 Md. 54, 79, 448 A.2d 916 (1982)).[3]

Mrs. Falise contends that the trial judge was not authorized to grant a monetary award because none was specifically requested by Mr. Falise. We note, however, that in his Amended Bill of Complaint, Mr. Falise prayed "that the Plaintiff be awarded such other and further relief as the nature of his case may require." This prayer was sufficient to permit the trial judge to render any necessary equitable adjustments *vis-a-vis* a monetary award.

As to the first step, the trial judge did categorize the property generally as both marital and nonmarital through the use of the source of the funds theory. He did, however, unfortunately err by classifying part of the real estate as nonmarital property. See discussion at part (I) *supra*. The trial judge examined the monetary and non-monetary contributions of each spouse, finding the contributions of Mrs. Falise to be "nominal."

The trial judge was correct in his observation that the titling of the property as tenants by the entireties did

---

2. Now Md.Family Law Code Ann. § 8-205 (1984).

3. *See also Harman v. Harman*, 61 Md.App. 554, 487 A.2d 689 (1985).

not give rise to a presumption that the house was intended as a gift to the wife. The Court of Appeals, in *Grant v. Zich,* 300 Md. 256, 477 A.2d 1163 (1984) noted that:

> Under the Act, a determination of what constitutes marital property for the purpose of granting a monetary award is not dependent upon the legalistic concept of title. The characterization of property as nonmarital or marital depends upon the source of the contributions as payments are made, rather than the time at which legal or equitable title to or possession of the property is obtained.

*Id.* at 269–70, 477 A.2d 1163. The Court then went on to state:

> [A] presumption of gift based upon the titling of property as tenants by the entirety when characterizing property as marital or nonmarital under § 3–6A–01(e) is not consonant with the legislative policies embodied in the Act. Accordingly, we now hold that when characterizing property as marital or nonmarital under § 3–6A–05(a) for the purpose of granting a monetary award under § 3–6A–05(b), a presumption of gift does not arise from the titling of property as tenants by the entirety. Rather, in characterizing property as marital or nonmarital under § 3–6A–05(a), the appropriate analysis to be applied is the source of funds theory enunciated in *Harper.*

*Id.* at 271–72, 477 A.2d 1163 (footnote omitted).

This principle was reaffirmed in *Dorsey v. Dorsey,* 302 Md. 312, 487 A.2d 1181 (1985) wherein the Court held that the estate of tenants by the entirety gives no rise to the presumption of gift, and that, instead, a valid inter vivos gift must be established. *Id.* at 316–17, 487 A.2d 1181. Hence, the trial judge was correct in deciding to apply the source of the funds theory.

As to the second step, the trial judge did determine the total value of the real property as follows:

> Both [Mr. Falise] and [Mrs. Falise's] appraiser value the house and land at $130,000.00 ( [Appellant's] Exhibit

No. 9) and [Mr. Falise] testified that the balance on the mortgage is $64,300.00. The value of the Sykesville house must be reduced downward to reflect this unpaid liability. *Schweizer v. Schweizer*, 55 Md.App. 373, 378 [462 A.2d 562] (1983), *cert. granted*, [298 Md. 49, 468 A.2d 1013 (1983)]. There is also a second mortgage obtained by the parties for furnishings in the amount of $5,600.00, ([Appellee's] Exhibit No. 5) and there is a current balance of $2,000.00 on this mortgage. Therefore, the value of the house is $63,700.00.

Apparently, neither party objects to the present value assigned at trial; thus, we need not address step two further.

■ The third and final step permits the trial judge to adjust the parties' equities concerning the marital property through the granting of a monetary award. We believe that this step was not properly exercised. The trial judge clearly found that Mr. Falise's monetary contributions to the Howard County residence far exceeded any monetary or non-monetary contributions of Mrs. Falise. *See* Md.Cts. & Jud.Proc.Code Ann. § 3–6A–05(b)(7) (repealed).[4] If the trial judge then followed the statute and supporting case law, a monetary award could have been rendered in favor of Mr. Falise "as an adjustment of [his] equities and rights ... concerning [the] marital property...." Md.Cts. & Jud. Proc.Code Ann. § 3–6A–05(b) (1984 Repl.Vol.) (repealed).[5] Instead, the trial judge granted a monetary award of $2,500 to Mrs. Falise "as her interest in the real estate."

What the trial judge had in mind is not abundantly clear. Facially, it appears that he believed that his action stripped Mrs. Falise of any interest in the real property, apart from the $2,500 award. A trial judge is not, however, permitted to transfer title to property. Section 3–6A–04(a)[6] of the Courts and Judicial Proceedings Article provides that while

---

4. Now Md.Family Law Code Ann. § 8–205(a)(8) (1984).

5. Now Md.Family Law Code Ann. § 8–205(a) (1984).

6. Now Md.Family Law Code Ann. § 8–202(a)(3) (1984).

a court may resolve disputes as to ownership of real property, "the court may not transfer the ownership of real property from one spouse to the other." In *Ward v. Ward,* 48 Md.App. 307, 426 A.2d 443 (1981), the judge awarded one spouse a $10,000 interest in real property held as tenants by the entirety. In finding this award to be improper, we held that the judge "effected a transfer of ownership of the property from one spouse to another, which § 3–6A–04(a) [7] flatly forbids him to do." 48 Md.App. at 311, 426 A.2d 443. This Court also found the $10,000 award to be improper if characterized as a monetary award.

> On the other hand, if the disposition were made pursuant to § 3–6A–05,[8] it was equally erroneous. As its caption suggests, that section permits the chancellor to grant a monetary award in adjustment of the parties' rights in marital property, but only after the court has first determined the value of all marital property, and then considered each of the nine factors specified. But the chancellor's Order did not contain, or amount to, *any* monetary award *per se.* The reduction of appellant's title interest, from one-half to a $10,000 fixed sum, will not suffice.

*Id.* at 311, 426 A.2d 443 (emphasis in original). The same reasoning applies to the instant case, *i.e.,* the trial judge had no authority to declare Mrs. Falise's "interest in the real estate." [9] Although the trial judge is presumed to know and follow the applicable law, *Lapides v. Lapides,* 50 Md. App. 248, 252, 437 A.2d 251 (1981), we cannot discern from the record before us that the trial judge, in determining the amount of monetary award, considered those factors, other than number (7), as required by former § 3–6A–05(b), now Md.Family Law Code Ann. § 8–205. Accordingly, we must

---

**7.** See *supra* note 10.

**8.** Now Md.Family Law Code Ann. § 8–205 (1984).

**9.** *See also Ward v. Ward,* 52 Md.App. 336, 344, 449 A.2d 443 (1982) (*Ward* II) ("Where a monetary award *is* made, the parties' property interests are not affected.") (emphasis in original).

remand the case for further proceedings so that the Marital Property Act may be applied properly. Then, if deemed appropriate, the judge may fashion a monetary award to adjust the equities of the parties.

### III.

The third and final issue raised herein relates to the $500 monetary award to Mrs. Falise which essentially represents her interest in a life insurance policy and various investment plans arising out of Mr. Falise's employment. The trial judge opined:

> Neither party has contested the status of these items as marital property but there is considerable argument as to their values in light of the 1974 (sic) separation agreement. The husband has been employed at M.C.A. for the past sixteen years and presumably has been accruing these benefits continuously. It should also be noted that these plans have all vested in the husband. The difficulty is that no evidence has been presented as to pre-1974 values of these items. The 1975 agreement settled the property rights of the parties and they therefore began anew, in theory, after their 1978 reconciliation. In addition, the parties remained separated for approximately three years before they reconciled in 1978 and remained together only three years. Further, when the Defendant left the house, she took many items of personal property, some of which were covered by the second mortgage. *The Court, as far as these items of marital property are concerned, feels that the small monetary and non-monetary contribution of the Defendant, together with the short time the parties were reconciled requires an award of $500.00.*

(emphasis added).

 The pitfalls mentioned earlier in part II exist here. Accordingly, we remand this issue for further proceedings so that the trial judge may apply the three-step procedure mentioned in part II *supra*. In classifying the property as "marital" or "nonmarital," we remind the trial judge that

he must fix a ratio as to the "marital" or "nonmarital" proportions of the property in accordance with the mandate of *Harper v. Harper,* 294 Md. 54, 80, 448 A.2d 916 (1982). There, the late Judge Rita Davidson, speaking for the Court of Appeals, said:

> [W]hen property is acquired by an expenditure of both nonmarital and marital property, the property is characterized as part nonmarital and part marital. Thus, a spouse contributing nonmarital property is entitled to an interest in the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property. The remaining property is characterized as marital property and its value is subject to equitable distribution. Thus, the spouse who contributed nonmarital funds, and the marital unit that contributed marital funds each receive a proportionate and fair return on their investment.

*Id.*

DECREE AFFIRMED AS TO DIVORCE, CUSTODY AND CHILD SUPPORT; DECREE VACATED AS TO MONETARY AWARDS AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; APPELLEE TO PAY THE COSTS.