Concurring Opinion by
Getty, J.
While I agree with the result reached today by the Majority, I would reach it on somewhat different grounds. Specifically, I would explicitly overturn the Court of Special Appeals’ holding in Falise v. Falise, 63 Md.App. 574, 581, 493 A.2d 385 (1985), that “[i]n order to exclude property ‘by valid agreement’ from the reach of a monetary award, [ ] parties must specifically provide that the subject property must be considered ‘non marital’ or in some other terms specifically exclude the property from the scope of the Marital Property Act.” Therefore, I respectfully concur.
Maryland Code, Family Law Article (1984, 2012 Repl. Vol.) (“FL”) 8-201(e) provides that property that is acquired by one or both parties during a marriage, however titled, is generally considered “marital property.” However the statute also sets forth several exceptions under which property acquired during a marriage by one or both parties is not considered “marital property,” One of those exceptions is for property “excluded by valid agreement.” FL 8-201(e)(2)-(3). One consequence of such an agreement to exclude real property that is held by one party to a marriage from being considered “marital property” is that, in the event of a subsequent divorce between the *303 married parties, the excluded property would not be subject to a monetary award pursuant to FL § 8-205.[1]
In this divorce action, the trial judge found that there was a “mutual agreement” between the parties, entered into during the course of their marriage, that Mr. McGeehan would “convey all his rights, title and interests” in the Mason Neck, Farside, and Embassy Park properties to Ms. McGeehan, so that those properties “would be wife’s property.” Maj. Op. at 272-75, 167 A.3d at 581-83. However, the trial judge ruled that the agreement was insufficiently specific to exclude the Mason Neck property from being “marital property,” because the parties did not expressly state that the properties would be excluded from being considered as marital property in the future.[2]
The practical effect of the trial judge’s ruling that there was no valid agreement to exclude any of the properties from *304 being “marital property” was that the properties at issue could be the subject of a “monetary award [ ] as an adjustment of the equities and rights of the parties concerning marital property.” FL § 8-205. And, although not mentioned by the Majority, the trial judge did in fact grant a $280,000 monetary award to Mr. McGeehan. McGeehan v. McGeehan, No. 2445 Sept. Term 2015, 2016 WL 6299681, at *2 (Md. Ct. Spec. App. Oct. 26, 2016).
In reaching her ruling that there was no agreement to exclude the properties at issue from being marital property, the trial judge explicitly relied upon the Court of Special Appeals’ opinions in Falise v. Falise, 68 Md.App. 574, 493 A.2d 385 (1985) and Golden v. Golden, 116 Md.App. 190, 695 A.2d 1231 (1997), explaining,
It would seem that it was the parties’ mutual agreement that the [Mason Neck] property would be wife’s property. Under the law of Maryland, even though property is titled in the name of one party or another party, it remains marital property and can be excluded by agreement of the parties. But the law is clear that to do that, and I just learned this, the agreement has to be specific not just that it’s my sole and separate property but it is my sole and separate property and will be excluded from marital property in the future. It has to be explicitly stated. It was not explicitly stated. I’ve seen no evidence that it was. So, under the cases of Golden versus Golden and Falise versus Falise, the property is now marital. However, it’s titled in wife’s name.
Maj. Op. at 272-73, 167 A.3d at 581-82.

Falise

In Falise, the Court of Special Appeals addressed the significance of a separation agreement entered into by a married couple, the Falises. 63 Md.App. at 577, 493 A.2d 385. Several years into their marriage, the Falises separated and entered into a separation agreement which provided, in pertinent part, that the Falises would each “mutually release, waive, surrender and assign unto the other, his or her heirs, *305 personal representatives and assigns, all rights, title, interest and claims which said parties might now have or may hereafter have as the husband, wife, widower, widow, next of kin, successor or otherwise, in and to any property, real or personal, that either of said parties may own or hereafter acquire!.]” Id. at 578 n.1, 498 A.2d 385. During the parties’ separation, Mr. Falise acquired property titled in his name in Howard County. Id. at 577, 493 A.2d 385. The parties subsequently entered into a short-lived reconciliation, during which a house was built on that property titled in both parties’ names as tenants by the entirety. Id. at 577-78, 493 A.2d 385. Ultimately, after the reconciliation broke down, Mr. Falise filed for divorce, which was granted by the trial court. Id. at 578, 493 A.2d 385. The trial judge found that the home held by the parties “was marital in part and nonmarital in part,” but that “both monetary and non-monetary contributions of [Mrs. Falise were] nominal,” and consequently granted a minimal monetary award of $2500 to Mrs. Falise. Id. at 579, 493 A.2d 385.
The Court of Special Appeals held that the separation agreement entered into by the Falises did not exclude the property subsequently acquired by Mr. Falise from being marital property. The intermediate appellate court offered two reasons for its holding. First, it suggested that “marital property” was not covered by the agreement because it was not an interest in real or personal property, explaining,
We doubt that the subject agreement could affect the status of something which is neither an interest in real or personal property, ie., marital property. Marital property is merely a term created by the legislature to describe the status of property acquired during the marriage, however titled (as defined in [FL § 8-201(e)]), title to which may have given rise to a potential inequity, upon dissolution of the marriage. That inequity, conceptually, may be corrected via a different legislative creature called the “monetary award.” Thus, the only function of “marital property” is to form a base for a “monetary award.” The legislature never intended that either spouse could have a legal interest in the “marital property” of the other since it merely intended to cure the *306 title[-]created inequity through the issuance of a “monetary award.”
Id. at 580, 493 A.2d 385.
The Court of Special Appeals in Falise also reasoned that because the Marital Property Act did not exist at the time of the parties’ agreement, Ms. Falise could not be deemed to have released a right that she did not have and could not have fairly anticipated. Id. at 580-81, 493 A.2d 385. The intermediate appellate court cited in support to the case of Smith , v. Smith, in which the Supreme Court of New Jersey considered whether a similar mutual release in a separation agreement would prevent a trial court from making an equitable distribution during a divorce. 72 N.J. 350, 371 A.2d 1 (1977). That court noted that generally, under New Jersey law, “claims arising after the date of delivery of the instrument are not covered by it unless explicitly mentioned, since they would not appear to have been within the contemplation of the parties.” Id. at 6. Because, at the time the couple entered into the separation agreement, New Jersey courts “had no power to make an equitable distribution of marital assets” the court held that the agreement “cannot be regarded as having released a right which [a party] did not have and could not fairly have anticipated.” Id.
Consequently, the intermediate appellate court held that “[i]n order to exclude property ‘by valid agreement’ from the reach of a monetary award, we believe that the parties must specifically provide that the subject property must be considered ‘non marital’ or in some other terms specifically exclude the property from the scope of the Marital Property Act.” Id. at 581, 493 A.2d 385.

Herget

Five years later, this Court in Herget v. Herget, 319 Md. 466, 573 A.2d 798 (1990) strongly disapproved of the Court of Special Appeals’ reasoning behind the specificity requirement stated in Falise. In Herget, a couple had entered into an antenuptial agreement two days prior to their marriage, which stated that each party “waives and surrenders any and all *307 claims she may have, now, or at the time of any termination of the proposed marriage between the parties,” in the property of the other “now owned or hereafter acquired.” 319 Md. at 469, 573 A.2d 798. A separate provision in the agreement stated that “each of the parties hereby waives and releases unto the other party, her or his heirs, next of kin, personal representatives and assigns, all of her and his respective rights, interests and claims in and to said property of the other[.]” Id. The parties subsequently divorced, and the wife contended that the agreement was invalid and, if valid, did not have the effect of barring her from receiving a monetary award. Id. at 467-68, 573 A.2d 798. The trial court found the agreement to be valid, but the Court of Special Appeals agreed with the wife that “the wife’s claim for a monetary award was not barred by the terms of the agreement.” Id. at 468, 573 A.2d 798. On appeal to this Court, “[t]he sole issue with which we [were] concerned [was] whether the agreement bars the wife’s claim for a monetary award.” Id. at 470, 573 A.2d 798.
We noted that the Court of Special Appeals had followed Falise, and held that “ ‘the right to a monetary award ... is not an interest in the estate or property of one’s spouse,’ and therefore is not covered by the language of the agreement.” Id. at 471, 573 A.2d 798 (quoting Herget v. Herget, 77 Md.App. 268, 279, 550 A.2d 382 (1988)). We summarized the holding of Falise that “the separation agreement in that case, by which each party agreed to relinquish all right, title, and interest in and to the property of the other then owned or thereafter acquired, did not effect a release of the right to a monetary award.” Id. We also noted the two reasons the Court of Special Appeals had offered to support the Falise holding: that the intermediate appellate court doubted such an agreement “ ‘could affect the status of something which is neither an interest in real or personal property, i.e., marital property[,]’ ” and that “the wife could not- be regarded as having released a right that she did not have and could not have fairly anticipated at the time the agreement was signed.” Id. at 471- *308 72, 573 A.2d 798 (quoting Falise, 63 Md.App. at 580, 493 A.2d 385).
Beginning our analysis with the second reason stated in Falise, we observed that the Court of Special Appeals had relied on New Jersey law stated in Smith v. Smith, 72 N.J. 350, 371 A.2d 1, 6 (1977), but held that law was “contrary to established Maryland law.” Herget, 319 Md. at 473, 573 A.2d 798. We noted that in Bernstein v. Kapneck, 290 Md. 452, 430 A.2d 602 (1981), “this Court held that a broad general release of claims for injuries ‘known and unknown, and which have resulted or may in the future develop’ sufficiently reflected the intent of the parties to release the defendant from any responsibility for a serious brain injury about which the parties neither knew or could reasonably have known at the time the release was executed.” Herget, 319 Md. at 473, 573 A.2d 798 (quoting Bernstein, 290 Md. at 456, 430 A.2d 602). We therefore stated that we “reject the notion that the parties in the case before us were incapable of releasing a right that did not then exist.” Id. We also stated a broader rule of law, namely, that “[w]e also reject the argument that general language cannot effect a full release of a specific right, even a right that is unknown at the time the agreement is drawn.” Id.
We then considered the Court of Special Appeals’ first reason in Falise, that a monetary award is not a “legal interest” in real property. We agreed that “the right to a monetary award does not carry with it a ‘legal interest’ in the other party’s property ... in the sense of title.” Id. at 475, 573 A.2d 798. However we regarded the conception of property rights and interest taken by the Court of Special Appeals as “overly narrow.” Id. We stated that, under the Maryland Marital Property Act, “this Court has approved a broad definition of the term ‘property,’ ” explaining,
The term property, “when considered in a broad sense, is a term of wide and rather comprehensive signification. ... It has been stated that the term embraces everything which has exchangeable value or goes to make up a man’s wealth—every interest or estate which the law regards of sufficient value for judicial recognition.”
*309 Id. (quoting Deering v. Deering, 292 Md. 115, 125, 437 A.2d 883 (1981)). We therefore determined that, as to the language of the agreement at issue, “in referring to mutual releases of all claims of rights or interests that each party might have or might thereafter acquire in and to any property of the other, these parties were using the term ‘property’ in its broad sense.” Id. at 475-76, 573 A.2d 798. And, we noted that as a general matter, a claim for a monetary award is simply “a claim against the property of the person from whom the award is sought.” Id. at 476, 573 A.2d 798. For those reasons, we concluded “that the intent of the parties manifested by their antenuptial agreement was to prevent the very type of claim [for a monetary award] that is now being made.” Id. at 477, 573 A.2d 798.
While some older opinions may become stale or surpassed by the gradual development of the law, others, grounded on firmer reasoning, remain compelling statements of the law even many years later. I believe that Herget is an example of a ease whose reasoning remains sound, and should be applied to the instant appeal. The statutory language at issue in Herget, now contained in FL § 8-201(e), has not been substantially changed, and was in existence prior to the agreement entered into between the McGeehans. This Court still generally gives full effect to the language of a general release. See Brethren Mut. Ins. Co. v. Buckley, 437 Md. 332, 343, 86 A.3d 665 (2014).[3] Courts also continue to recognize that “rights” or “interests” as to real property are wide and comprehensive concepts, including not only title but a much broader “bundle *310 of sticks.” See USA Cartage Leasing, LLC v. Baer, 202 Md.App. 138, 172, 32 A.3d 88 (2011), aff'd, 429 Md. 199, 55 A.3d 510 (2012); United States v. Craft, 535 U.S. 274, 278, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002).[4]
Therefore, pursuant to Herget and the broader concept of property rights and interests described in that case, I would hold that the general release entered into by the McGeehans, under which Mr. McGeehan agreed to convey “all his rights, title, and interests” in the properties at issue to Ms. McGee-han, should be given full effect. And, I would hold that the release shows a clear intent to convey the property to Ms. McGeehan free of all claims from Mr. McGeehan, including any future claims by Mr. McGeehan that the property is marital property and subject to a monetary award.

Golden

Golden v. Golden, 116 Md.App. 190, 695 A.2d 1231 (1997) is the second case on which the trial judge in the instant case relied. However, Golden is inapposite to the facts of this case. The Majority describes the holding in Golden,
In Golden, the Court of Special Appeals only decided whether the trial court had erred in finding the existence of an oral agreement entered into premaritally that essentially iterated “what was hers was hers and what was mine was mine[.]” ... Our intermediate appellate court in Golden disagreed and posited, “We perceive that the finding of an oral property settlement agreement was erroneous. We perceive of nothing in the testimony or evidence in this case that would constitute an agreement sufficient to bind the parties to it or to support the trial judge’s finding.”
*311 Maj. Op. at 292, 167 A.3d at 593 (quoting Golden, 116 Md.App. at 201-202, 695 A.2d 1231).[5] In contrast, the trial court in this case ruled that a valid agreement existed whereby Mr. McGeehan would “convey all his rights, title and interests” in the Mason Neck, Farside, and Embassy Park properties to Ms. McGeehan. Therefore, Golden does not control the outcome here.

Conclusion

As the trial court’s ruling is not supported by Golden, the resolution of this appeal turns on whether the trial judge was correct to rely on Falise to find that the parties’ agreement did not apply to exclude Mason Neck, Farside, and Embassy Park from being considered “marital property” and the subject of a monetary award because the agreement did not specify that those properties would be considered non-marital or outside the scope of the Marital Property Act. The Majority holds that the trial court erred in so ruling because Maryland courts have not applied the holding in Falise, which involved a marital separation agreement, to the type of postnuptial agreement entered into by Mr. and Ms. McGeehan (or to antenuptial agreements). Maj. Op. at 300, 167 A.3d at 598.
Although I have no dispute with the Majority’s conclusion that Falise has been narrowly applied, I believe that in light of our prior decision in Herget, a more straightforward way to resolve this appeal would be to simply overturn the holding in Falise that “in order to exclude property ‘by valid agreement’ from the reach of a monetary award ... parties must specifically provide that the subject property must be considered ‘non marital’ or in some other terms specifically exclude the property from the scope of the Marital Property Act.” 63 *312 Md.App. at 581, 493 A.2d 385. And, having first overturned FaMse, I would thereafter hold that, pursuant to Herget, the agreement entered into by the parties—that Mr. McGeehan would “convey all his rights, title and interests” to Ms. McGee-han—is a valid agreement to exclude that property as marital property under FL § 8-201(e).[6] For that reason, I respectfully concur.

. When a party in a divorce proceeding petitions the trial court for a monetary award, the trial court follows a three step procedure,
First, for each disputed item of property, the court must determine whether it is marital or non[-]marital. Second, the court must determine the value of all marital property. Third, the court must decide if the division of marital property according to title will be unfair; if so, the court may make a monetary award to rectify any inequity. ...
Reichert v. Hornbeck, 210 Md.App. 282, 361, 63 A.3d 76 (2013) (quoting Innerbichler v. Innerbichler, 132 Md.App. 207, 228, 752 A.2d 291 (2000)) (additional internal citations omitted). In making a determination as to whether it would be equitable to grant a marital award, and if so for what amount, a trial court must consider parties’ marital and non-marital property. See FL § 8-205(b) (listing factors a trial court must consider in making a determination as to a marital award, including "the value of all property interests of each party”). However, a monetary award may only be awarded "as an adjustment of the equities and rights of the parties concerning marital property,” FL 8-205(a) (emphasis added). Thus, while a trial court must consider both marital and non-marital property, the focus of the marital award is to reach an equitable division of marital property.

. By the time of the divorce proceedings, the Farside and Embassy Park properties had been sold. But, the record indicates that the proceeds of that sale may have been rolled into the purchase of a fourth property, the Log Jump property. Maj. Op. at 270, 167 A.3d at 580. The trial judge did not make findings as to that issue and "also determined that the Log Jump property ... was marital property, without any discussion of whether any portion of it was excluded by valid agreement or any consideration of its financial underpinnings or source of funds.” Id. at 273, 167 A.3d at 582.

. In Brethren we discussed Bernstein v. Kapneck, 290 Md. 452, 430 A.2d 602 (1981), and agreed with its holding that general releases are generally given the full effect that the language of the release would allow, unless there were constitutional, statutory or policy barriers to effectuating that language. 437 Md. at 343, 86 A.3d 665. Although in Brethren we found that a there was a statutory barrier to effectuating the full language of the general release at issue before us in that appeal, see id. at 344-45, 86 A.3d 665, that is not true here. As to agreements between married parties to exclude property from being considered marital property, not only is there not a statutory barrier, but the relevant statute expressly permits a party to exclude property by valid agreement. FL§ 8-201(e).

. Moreover, a spouse’s potential future interest in receiving a marital award for marital property, which is contingent upon a divorce and the decisions of a trial court, is akin to the expectancy interest of a potential beneficiary in a will, which is contingent upon whether the testator decides to include that individual in his will and under what terms. Maryland law has long recognized that the contractual conveyance of such future expectancy interests may be valid and enforceable. See Keys v. Keys, 148 Md. 397, 129 A. 504 (1925). See also Douglas v. Lyles, 841 A.2d 1, 5 (D.C. 2004).

. The Court of Special Appeals also stated in Golden, in dicta, that "[w]e would doubt, although we do not now specifically hold, that a ‘what is hers is hers and what is mine is mine’ oral agreement, no matter how often repeated, could ever contain the degree of specificity required by Falise, i.e,, ‘the parties must specifically provide that the subject property must be considered ‘non marital’ or in some other terms specifically exclude the property from the scope of the Marital Property Act.’” Golden, 116 Md.App. at 203, 695 A.2d 1231 (quoting Falise, 63 Md.App. at 581, 493 A.2d 385).

. As a more general statement of the law, I would also hold that any valid contractual agreement by a party to a marriage to waive, transfer, convey, or otherwise grant all or any rights, title, and interest in certain real property to his or her spouse, or a similar mutual agreement entered into by both spouses, is a valid agreement to exclude that property as marital property under FL § 8-201(e).