DIFFENDALL *v.* DIFFENDALL, Etc.

[No. 265, September Term, 1964.]

*Decided May 14, 1965.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, SYBERT and BARNES, JJ.

*L. Robert Evans* for appellant.

*Samuel Kimmel* for appellee.

PRESCOTT, C. J., delivered the opinion of the Court.

This case is one of first impression in this Court. An agreed statement of facts follows:

"The parties to this case were once husband and wife, and as such on February 17th, 1947, acquired title to a mausoleum compartment described as Family Compartment 'U,' * * *.

"Thereafter the parties to this case were divorced, A Vinculo Matrimonii, by decree of this Court dated prior to the judgment in this case, the Defendant being now known as Isabelle Martinez.

"On April 29th, 1953, in this case, this Court entered a judgment for the Plaintiff, Charles A. Diffendall in the amount of $2540.83 and costs, the total amount now due being more than $4000.00 plus costs, there having been nothing paid on account of the judgment.

"Since the acquisition of the said mausoleum compartment, neither party has conveyed or attempted to convey his interest in the compartment.

"Physically the mausoleum compartment is arranged in a vertical row of five spaces. It was purchased for the sum of Four Thousand Five Hundred Dollars ($4500), in 1947. Two of the spaces are now occupied by the bodies of the parties' son and the Plaintiff's and Defendant's grandson.

"The value of the Defendant's interest in the mausoleum compartment in question is in excess of Five Hundred Dollars. The Plaintiff is prepared and hereby agrees to bid at least $501.00 for Defendant's interest in the compartment.

"On April 19, 1963 a Writ of *Fieri Facias* was directed to the Sheriff of Baltimore County, upon instruction from the Plaintiff, and the Sheriff levied up-

on the mausoleum compartment in question, and nothing else.

"Attached to this stipulation and agreement is a copy of Certificate of Ownership No. 486 whereby the parties to this case took title to the mausoleum compartment on February 17, 1947. This certificate of ownership is recorded among the Land Records of Baltimore County in Liber RRG, 4121, folio 77.

"That the three remaining crypts in the mausoleum compartment in question are not contiguous to each other, there being one remaining crypt separated from two other contiguous crypts by the bodies of the son and grandson referred to above."

In addition to the agreed upon facts, the testimony discloses that in the family type compartment, the family name in large letters is placed at the top. The president of the mausoleum company would not permit either Mr. Diffendall or Mrs. Martinez to sell one of the crypts to a third person, unless he was presented with a court order or his attorney advised him that he had to. And the president had never known of the crypts in a family compartment being sold to third persons.

The trial judge held that the interest of Mrs. Martinez, defendant below, was not subject to execution; whereupon the appellant noted this appeal.

The only question presented for our determination is whether Code (1957), Article 23, Section 164, conflicts with Article III, Section 44, of the Maryland Constitution. Said Section 164 reads as follows:

"Every burial lot, sold or conveyed in such cemetery and every crypt sold or conveyed in any mausoleum, shall be held by the proprietors thereof for the sole purpose of sepulture and for no other, and shall not in any manner be subject to attachment or execution for debt or affected by the insolvent laws of this State; but the estate of the owner or owners in their respective lots and crypts shall descend as real estate to heirs, may be devised by will or may be disposed of by the owner by sale with the approval of the presi-

dent and managers of the cemetery or mausoleum corporation or of any person or corporation acting as trustee therefor."

Section 44 provides: "laws shall be passed by the General Assembly, to protect from execution a reasonable amount of the property of the debtor, not exceeding in value, the sum of five hundred dollars."

It is appellant's contention that the Martinez interest in the crypts is "property" and the value of that property is in excess of $500; hence the legislative act must yield to the constitutional provisions.

There can be little doubt that the word "property," when considered in a broad sense, is a term of wide and rather comprehensive signification. Cf. *Elkton Electric Company v. Perkins,* 145 Md. 224 (personal property); 73 C.J.S., *Property,* § 1. It has been stated that the term embraces everything which has exchangeable value or goes to make up a man's wealth—every interest or estate which the law regards of sufficient value for judicial recognition. *Samet v. Farmers' & Merchants' Nat. Bank of Baltimore,* 247 F. 669 (C.A. 4).

However, through the ages, all civilized peoples have considered the final resting place of their dead as hallowed and sacred ground. Hence the Courts and legislative bodies have almost universally recognized that the "property" or "estate" which one acquires when he purchases a cemetery lot or a crypt is a "qualified" property or estate. It is generally referred to, even though conveyed by a deed absolute in form, as an easement, privilege, or license for the sole purpose of sepulture as long as the property remains a cemetery.[1] *Partridge v. First Ind. Church,* 39 Md. 631; *Rayner v. Nugent,* 60 Md. 515. And such estates are generally not held for the purpose of barter or sale; consequently, they seldom have any commercial connotation. *Abell v. Green Mount Cemetery,* 189 Md. 363. Cf. *Hines v. State,* 149 S. W. 1058 (Tenn.) ; *Schroder v. Wanzor,* 36 Hun. (N. Y.) 423.

---

1. And this easement, privilege or license is subject to the regulations governing the cemetery and to the police power of the State.

This Court has recognized that, subject to constitutional limitations, the State, in the exercise of its police powers, has the right to provide for the creation of cemeteries and to regulate their use. *Gordon v. Commrs. of Montgomery County,* 164 Md. 210. And the Legislature has on many occasions manifested its realization that the property right acquired in cemetery lots or crypts is an unusual one. For example, Section 164, under consideration here, provides that such property right shall be held by the proprietor for "the sole purpose of sepulture and for no other," and it cannot be alienated by sale without "the approval of the president", etc. See also Article 16, Sections 119 and 120 (providing for the sale of burial grounds and the removal of interred bodies under certain circumstances) ; Article 23, Sections 162, 163 and 165 (limiting the amount of land that may be held by cemetery companies; providing that no streets, etc., shall be opened through such land; and further providing that a certificate under seal of the ownership of a cemetery lot or crypt shall have the same effect as conveyances of real estate, which have been executed, acknowledged and recorded) ; and Article 93, Section 345 (providing that the rule against perpetuities shall not, under certain circumstances, apply to grants or devises for the perpetual care of cemetery lots or "other place of sepulture").

As we view the case, our question narrows to this: Did the people of Maryland, when they adopted Section 44 of Article III of their Constitution intend that the easement, privilege, or license obtained by a purchaser of a family crypt (of a reasonable size to accommodate the family and which was obtained at a reasonable cost), who, in good faith, obtained it for the sole purpose of sepulture and without any thought of barter or sale, to come within the purview of "property of the debtor" as those terms are used in Section 44? We limit our decision to the answer of this question, alone, and we think the answer thereto is contained in what we have said above and in the opinions in the cases of *Abell v. Green Mount Cemetery, supra,* and *Burdette v. Jackson,* 179 F. 229 (C.A. 4).

In *Abell,* the Court specifically noted that "a place for the burial of the dead has characteristics differing from those of an ordinary tract of land," and went on to point out the difference

"with respect to execution and taxation" in cemetery lots held for speculative purposes and those merely held for sepulture. The Court refused to apply the general rule "that restrictions on the free use of land are not favored by the law, and are strictly construed against the grantor," because "to apply to restrictions on such [cemetery] lots the usual rules would be to invoke against such restrictions a doctrine, the foundation of which is directly contrary to the theory on which such lots are sold."

In *Burdette, supra,* the appellant owned 10 cemetery lots, scattered throughout the Lorraine Cemetery. He used only one of the lots as a place of sepulture for his family. Upon going into bankruptcy, he claimed all ten of the lots should be allotted to him as his property. The Court referred to our statute (now Article 23, Section 164) and held that 9 of the lots were purchased for speculative purposes and hence were the property of his trustee, while the one held for sepulture, alone, was exempted by the statute. The Court stated that the amount of land that would be exempt under the statute would "depend upon the size of [his] family," and, under the laws of Maryland, the bankrupt was undoubtedly entitled to hold the lot which he had selected for burial purposes, and this guaranteed to him and his family decent interment.

We, therefore, hold that under the circumstances of this case, the estate or interest of Mrs. Martinez in the crypts was not "property of a debtor" within the purview of Section 44; hence, the trial judge was correct in his ruling.

*Judgment affirmed, with costs.*