ARNOLD G. CARLSEN, PLAINTIFF-RESPONDENT-CROSS-APPELLANT, v. GLADYS C. CARLSEN, DEFENDANT-APPELLANT-CROSS-RESPONDENT.

Argued February 23, 1976—Decided January 27, 1977.

*Mr. J. Mortimer Rubenstein* argued the cause for appellant-cross-respondent (*Messrs. Rubenstein and Sherwood,* attorneys; *Mr. Steven R. Rubenstein,* on the brief).

*Mr. Joseph Schoenholz* argued the cause for respondent-cross-appellant.

The opinion of the court was delivered by

MOUNTAIN, J. This is a companion case to *Smith v. Smith,* 72 *N. J.* 350 (1976), decided this day. As in *Smith,* we are called upon to consider the effect of a pre-1971 separation agreement on a claim for equitable distribution incident to a divorce action initiated pursuant to the "no-fault" amendments to the divorce law, *N. J. S. A.* 2A:34–1 *et seq.* The agreement in this case differs somewhat from that in *Smith.* It cannot be described as dealing only with maintenance and support, since, superficially at least, it has some of the characteristics of a property settlement. Furthermore, it was not a purely private contract between the parties, but was incorporated in a judgment for separate maintenance.

The trial judge in the present divorce action, viewing it as a support agreement, confirmed most of its provisions and additionally awarded defendant wife $100,000 by way of equitable distribution as her share of the assets acquired during marriage. The Appellate Division, regarding it as a property settlement agreement, held that it was binding on the parties if found to be equitable and fair. It accordingly

reversed and remanded the case to the trial court for a determination of this latter issue. *Carlsen v. Carlsen,* 131 *N. J. Super.* 34 (App. Div. 1974). Defendant wife petitioned for certification, contending that the agreement reached in the earlier separate maintenance suit should not have been held to bar her right to equitable distribution in the present divorce action. Plaintiff husband cross-petitioned, disputing the correctness of that part of the Appellate Division opinion and judgment which held that the provisions of the earlier agreement were subject to judicial review. We granted both petition and cross-petition, 67 *N. J.* 94 (1975), in order to give further consideration to the effect of a pre-1971 separation agreement on subsequent proceedings under the new divorce law.

Mr. and Mrs. Carlsen were married in 1958. Both were of mature age and had been previously married. Mr. Carlsen was divorced from his first wife, by whom he had had two children; Mrs. Carlsen was a widow with two children. Two more children were born of the 1958 union.

At the time of the marriage Mr. Carlsen was the proprietor of a roofing and siding business and also owned farm property in Colts Neck. His total assets, according to his own testimony, were valued at $285,000.[1] His annual business income seems to have been approximately $20,000. Mrs. Carlsen had a net worth of $542,000, mainly representing the value of inherited stocks, which yielded an income of about $18,000.

When the parties married, they moved into Mrs. Carlsen's house in Oradell. Later, apparently using Mrs. Carlsen's money, they bought a home in Montclair where they lived

---

[1]The trial judge, relying upon a balance sheet dated December 21, 1958, suggested that a more accurate figure might be $87,875, or perhaps $102,811.20. The trial took place well before this Court's opinion in *Rothman v. Rothman,* 65 *N. J.* 219 (1974). Because there must be a remand in this case, we call attention to what was said in *Rothman* as to necessary pre-trial preparation with respect to assets eligible for equitable distribution. 65 *N. J.* at 232–33.

for four years before selling it and moving to the Colts Neck farm. According to Mrs. Carlsen, her income was used throughout this period to maintain the household, and when it did not prove sufficient, she sold some of her holdings to obtain more cash. She also claims to have put $25,000 into her husband's business and at some point created a trust fund for the benefit of her mother and children. Mr. Carlsen, meanwhile, applied the greater part of his own income to meet his support obligation to his first wife and to improve his business and the farm property.

In 1967, Mrs. Carlsen filed a complaint in Superior Court seeking separate maintenance on the grounds of extreme cruelty and constructive desertion. She also sought an accounting of moneys advanced by her during the marriage for payment of household bills and as an investment in Mr. Carlsen's business, and demanded a one-half share in the farm property. The agreement at issue in the present action was reached in settlement of that litigation.

In addition to defining rights and obligations, not here relevant, as to custody, visitation and child support, the agreement included the following pertinent provisions:

1. Division of tangible personalty.

2. An undertaking by both parties to exchange releases of "each other's rights in the property of the other as spouse," and to release the rights of dower and curtesy in each other's lands "now owned or hereafter acquired."

3. Assignment by the wife to the husband of her stock in his business, Carlsen Home Modernizing Company. It was expressly stipulated that the wife's right to seek an accounting or bring a stockholder's suit in connection with her interest in the business was to survive both the assignment of the stock and the execution and delivery of the general release.

4. Creation by the husband of a $75,000 trust fund, the income to be paid to the wife until her remarriage or death, subject, however, to the corpus being distributed to the

children of the marriage in installments as they reached the ages of 25, 30, and 35.

With their attorneys, the parties appeared in court and placed this agreement on the record. Although the trial judge made no findings of fact as to the fairness of the agreement, he ascertained from the parties that they understood and approved its provisions and had discussed them with their attorneys. Accordingly, he dismissed Mrs. Carlsen's complaint and incorporated the terms of the agreement in a consent judgment entered May 18, 1969. All the provisions set forth above have since been fully performed.

On June 14, 1971, Mr. Carlsen instituted this action for divorce on the ground of desertion, alluding specifically in his complaint to the agreement embodied in the prior judgment for separate maintenance. Mrs. Carlsen counterclaimed for divorce on the grounds of extreme cruelty and constructive desertion, and sought support and alimony. After the new divorce law went into effect on September 13, 1971, both parties filed supplemental claims for "no fault" divorce based on separation for over 18 months, and Mrs. Carlsen sought equitable distribution of the assets acquired during the marriage. The trial court granted divorces to both parties on the "no fault" ground on May 12, 1972. Shortly thereafter a hearing was held on all matters not resolved at the divorce trial; *viz*, custody, support, equitable distribution and counsel fees.

At this hearing, evidence was presented that Mr. Carlsen's assets had at that time a value of something over $290,000, while Mrs. Carlsen's had decreased to about $222,000, yielding her an income of about $13,500. It also appeared that Mrs. Carlsen had had a carcinoma and undergone major surgery in 1967 for the removal of infected lymph glands; the trial court considered that the prognosis as to her health could at best be described as "guarded." Taking into consideration such guidelines for equitable distribution as the age and health of the parties, the length of the marriage, the number of children, and the property each brought to

the marriage,[2] the trial court, as has been previously stated, awarded Mrs. Carlsen the sum of $100,000 as representing her equitable share of the marital assets. No award of alimony was made. The earlier separate maintenance agreement was specifically mentioned in the judgment, and it was directed that such provisions of that arrangement as were not in conflict with the new judgment should remain in force. As we have seen, this determination was reversed by the Appellate Division, which found that the earlier contract was in the nature of a property settlement agreement and hence binding on the parties, provided its terms were found to be just and equitable.

We have today held in *Smith v. Smith, supra,* 72 *N. J.* 350 (1976), that a pre-1971 separation agreement concerned almost exclusively with support provisions, and effecting no real change in the property interests of the spouses, does not bar a later claim for equitable distribution in a divorce proceeding instituted under the new law. In the present case our first concern must be to determine whether the agreement reached in May, 1969 is a support agreement only, as defendant wife asserts, or whether it also undertakes in a significant way to effect a division of marital assets.

Here the husband became obligated to establish a trust of $75,000. Upon examination, however, it appears that this trust was primarily for the benefit of the two children of the marriage. Each will commence to receive payments of principal at age 25; when the younger attains the age of 35, the trust will terminate entirely, the children then having been paid the entire corpus. Also there is a suggestion in the record that although the wife was to receive income payments during the life of the trust, it was contemplated that they would be used by her chiefly for the children's benefit. The assignment by the wife of her stock in her husband's company was of no great moment

---

[2]The criteria are quite similar to those later set forth by this Court in *Painter v. Painter*, 65 *N. J.* 196, 211–12 (1974).

since she had only a single qualifying share. Thus when scrutinized closely, the agreement cannot be said to be of such a nature as, in the light of what we have said in *Smith v. Smith, supra,* will foreclose a claim for equitable distribution.

On remand to the trial court, the issue as to whether there should be an allocation of eligible assets by way of equitable distribution, and if so in what amount, must be considered in the light of our decision in *Chalmers v. Chalmers,* 65 *N. J.* 186 (1974), *Painter v. Painter,* 65 *N. J.* 196 (1974) and *Rothman v. Rothman,* 65 *N. J.* 219 (1974), all decided after the original hearing before the trial court in this case took place. The identification and valuation of eligible assets, in the event an equitable distribution is made, should be undertaken as of May 18, 1969, the date of the consent judgment containing the terms of their earlier agreement.

It will be recalled that the decision of the Appellate Division remanded the case to the trial court "for findings of fact and conclusions of law as to whether the separation agreement was 'just and equitable'." 131 *N. J. Super.* at 36. In his cross-petition for certification, as well as in his brief, the husband contends that the earlier agreement possessed a quality of finality which deprived the courts of any right of review, including the conducting of an inquiry as to its fairness. We cannot accept Mr. Carlsen's contention. As a contract between husband and wife, the agreement is unenforceable at law. *N. J. S. A.* 37:2–5; *Bendler v. Bendler,* 3 *N. J.* 161, 168–69 (1949); *Wolff v. Wolff,* 134 *N. J. Eq.* 8, 16 (Ch. 1943). Such a contract may, however, be enforced in equity if found to be fair and equitable.

Contracts between husband and wife are void at law and are recognized as valid in equity only if they are just and fair. [*Wolff v. Wolff, supra,* at 16]

Separation agreements between spouses have long been considered to fall within the category of contracts enforceable

in equity, but only if found to be just. *Berkowitz v. Berkowitz*, 55 *N. J.* 564, 569 (1970); *Schlemm v. Schlemm*, 31 *N. J.* 557, 581–82 (1960).[3]

█ The fact that the agreement of May 19, 1969 was embodied in a judgment is of no particular importance. The compact was reached by the parties themselves and accepted by the court upon ascertaining that it was understood by husband and wife and that each had received the advice of counsel. Its incorporation in a judgment did not alter its essentially consensual character.

█ We make one further observation that may or may not, on remand, be found applicable here. The only assets that can be found eligible for equitable distribution in any case are those acquired by the spouses during the span of the marriage. Should it be determined that all such assets have been expended, there would then be nothing to distribute. *Painter v. Painter, supra,* 65 *N. J.* at 214–17.

The judgment of the Appellate Division is reversed and the cause is remanded to the trial court to determine the issue of equitable distribution in accordance with what has been said above and in *Smith v. Smith, supra.* The trial court will be at liberty to review the earlier determination as to alimony. In no event should the trust arrangements be disturbed.

So Ordered.

---

[3]*Schlemm* overruled an aberrational line of cases spawned by *Apfelbaum v. Apfelbaum,* 111 *N. J. Eq.* 529 (E. & A. 1932), which had held that support agreements, since they were in derogation of the court's statutory power to award permanent alimony and to modify the award in the light of the changing situation of the parties, were not specifically enforceable under any circumstances. Justice Jacobs, writing for this Court, held that *Apfelbaum* had needlessly restricted the flexible nature of the remedy of specific performance. In *Schlemm* this Court revived the authority of earlier cases which had held that the Court of Chancery had inherent equitable jurisdiction to enforce separation agreements so long as they were fair and just. 31 *N. J.* at 576–82.

*For reversal and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For affirmance*—None.