550 A.2d 382

**Mary Elizabeth HERGET**

v.

**Charles E. HERGET, Jr.**

**No. 156, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Nov. 30, 1988.

270

Bruce A. Kaufman (Rosenthal & Kaufman, P.A., on the brief), Baltimore, for appellant.

James G. Beach, Jr., Towson, for appellee.

Argued before GARRITY, ROSALYN B. BELL and KARWACKI, JJ.

KARWACKI, Judge.

Mary Elizabeth Herget appeals from certain provisions of a judgment of divorce entered by the Circuit Court for Baltimore County which terminated her marriage to Charles E. Herget, Jr., the appellee. The principal issues in this case concern the validity of an antenuptial agreement executed by the parties on September 27, 1973 wherein they waived alimony in the event of their divorce, and whether, if valid, that agreement also barred appellant's claim for a monetary award pursuant to § 8–205 of the Family Law Code Ann., which was enacted by Ch. 794 of the Acts of 1978.

### Validity of the Agreement

The parties met in March of 1970. Appellant, then 23 years of age, was separated from her husband whom she had married in 1964. (She was divorced on August 26, 1971.) Her two children of that marriage, Melissa Ruth born in 1966 and Stacey Elizabeth born in 1968, were in her custody. Mr. Herget, who was approximately 30 years old and already a highly successful business man, had never been married.

They began to date, but their relationship was interrupted on several occasions over the next three and one-half years because of disagreements which arose between them over Mr. Herget's "seeing other women." During one of these intervals, the appellee invited appellant to join him for dinner on August 25, 1973, and while they were at the

restaurant, he proposed marriage to her. He promised to be faithful to her and to adopt her two daughters. She accepted his proposal the next day. At Mr. Herget's suggestion, their wedding was scheduled for September 29, 1973, so that they could use a trip he had planned to Mexico on September 30th as their honeymoon.

Early in September Mr. Herget advised appellant that it was necessary that they enter an antenuptial agreement prior to their marriage. Appellant did not object since she was desirous of preserving her considerable estate for her children. On September 11, 1973, the parties met with Frank T. Gray, Esq., who had represented Mr. Herget and his family's businesses for over 20 years, for the purpose of discussing estate planning and an antenuptial agreement. At that meeting Mr. Gray obtained financial information from both of them. The evidence was conflicting as to whether appellant was advised that Mr. Gray was not representing her. Nevertheless, the trial judge found as a fact that:

[a]lthough Gray told Mrs. Herget it was desirable for her to have her own attorney, he did not insist upon it and was not as emphatic as he ought to have been. However, Gray did not undertake to represent Mrs. Herget and gave her no legal advice.

The next day Mr. Gray forwarded a draft of an antenuptial agreement to Mr. Herget. The letter accompanying the draft stated:

Enclosed herewith is a proposed Agreement between yourself and Betsy for consideration. I believe this covers the points we discussed. Another copy is also being sent to Betsy at the same time for her consideration. I would encourage Betsy to have her lawyer, who I assume is Dick Moore, review the Agreement for her if she feels this would be desirable.

It should always be borne in mind that the existence of this Agreement does not prevent either party from making provision for the other by will or otherwise, including

in your case, provision that your estate is to discharge any mortgage indebtedness on the house.

Any comments would be appreciated.

A copy of that letter with the drafted agreement was sent to the appellant. Nevertheless, appellant never consulted an attorney with regard to the agreement. Thereafter, Mr. Gray discussed the agreement with both appellant and appellee on the telephone, and on September 24th he mailed a proposed estate plan to Mr. Herget and a copy thereof to appellant. That plan embodied the financial information which the parties had provided Mr. Gray on September 11. It reflected a "present" estate for Mr. Herget of $1,604,000. Appellant's "present" estate was valued at $690,000 with the notation that she anticipated the payment of a vested interest in a trust under her grandmother's will valued at $80,000 within four years. In computing the "present" estate of each of the parties, Mr. Gray included the face value of insurance which they owned on their own lives. When the cash surrender value of these policies is substituted for the face value, Mr. Herget's net worth was reflected as $1,435,000 and appellant's net worth was reported as $490,000. Neither party disclosed their current income in connection with this estate planning; however, the evidence at trial showed that Mr. Herget's income for 1973 was $50,039 and that appellant earned $28,650 on her investments during that year.

The agreement as originally drafted was signed at appellant's home on September 27. She testified that she did not read the agreement before signing it.

In *Frey v. Frey*, 298 Md. 552, 471 A.2d 705 (1984) the Court of Appeals, overruling *Cohn v. Cohn*, 209 Md. 470, 121 A.2d 704 (1956), held that a waiver of alimony in an antenuptial agreement was not void *per se*. The Court thus abandoned its former distinction between an antenuptial agreement in contemplation of the death of one of the parties and an antenuptial agreement in anticipation of a possible divorce. Such agreements in contemplation of

death have long been enforceable in this State so long as validly entered. *Hartz v. Hartz*, 248 Md. 47, 234 A.2d 865 (1967). In determining validity of an antenuptial agreement in anticipation of divorce, the Court in *Frey v. Frey, supra,* 298 Md. at 563–64, 471 A.2d 705, instructed:

The agreements are not to be rejected automatically as contrary to public policy; rather, the question is the validity of the agreements. All such antenuptial agreements, therefore, are to be evaluated upon the factors indicated in *Hartz v. Hartz,* 248 Md. 47, 234 A.2d 865 (1967). The agreement must be fair and equitable in procurement and result. *Id.* at 57, 234 A.2d at 871. The parties must make frank, full and truthful disclosure of all their assets. *Id.* The agreement must be "entered into voluntarily, freely and with full knowledge of its meaning and effect." *Id.* Further, we have emphasized the importance of independent legal advice in evaluating whether the agreement was voluntarily and understandingly made. *Id.* Also, in evaluating the disclosure and procurement of the agreement, the trial judge must remember that the parties stand in a confidential relationship. *Id.* at 56, 234 A.2d at 870; *see also Levy v. Sherman,* 185 Md. [63] at 67–72, 43 A.2d [25] at 27–29 [1945].

The real test in a determination of the validity of an antenuptial agreement is whether there was overreaching, that is, whether in the atmosphere and environment of the confidential relationship there was unfairness or inequity in the result of the agreement or in its procurement. Frank, full and truthful disclosure of what is being relinquished (or in lieu thereof actual knowledge otherwise available or obtained) is the key that turns the lock of the door leading to impregnable validity.

*Hartz,* 248 Md. at 57, 234 A.2d at 871 (footnote omitted).

In upholding the validity of the antenuptial agreement in the case *sub judice,* the trial judge carefully applied the factors in *Hartz v. Hartz, supra,* to the evidence which had

been presented to him. The scope of our review of his conclusion is limited by Rule 8–131(c); we "will not set aside the judgment of the trial court on the evidence unless clearly erroneous and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses."

■ As we noted earlier, prior to the execution of the agreement the parties exchanged detailed information as to their assets for estate planning purposes. The appellant received a copy of the estate plan reducing that financial information to writing prior to her execution of the agreement. The evidence at trial showed that Mr. Herget did fail to disclose an interest in a pension accruing for him in two corporations who employed him. That interest had a value of $71,700. The trial judge found as a fact, however, that his failure to disclose that interest was inadvertent. Moreover, the court concluded that the omission was not material since it only represented a small fraction of Mr. Herget's total net worth. Also, the court noted that neither party reported their current income for the estate plan. Nevertheless, the appellant had kept fairly steady company with her future husband for over three and one-half years prior to executing the agreement. She had been a frequent guest in his lavishly furnished penthouse in a downtown Baltimore high rise apartment building. She had visited the offices of his highly successful employee benefits and insurance business. She had traveled in the circle of his equally affluent friends and accompanied Mr. Herget on trips to California, Florida and the Bahama Islands. Hence, appellant was fully aware that Mr. Herget's income was quite substantial. Based on this evidence, the court's conclusion that Mr. Herget had complied with the *Hartz* factor of "frank, full and truthful" disclosure was not clearly erroneous.

■ Turning to the fairness of the agreement, we hold that the court properly determined this *Hartz* factor from the circumstances existing at the time of the execution of

the agreement rather than from any post-agreement occurrences. *Martin v. Farber,* 68 Md.App. 137, 141–45, 510 A.2d 608 (1986). In doing so, the court refused to consider evidence of the net worth of the parties at the time of the dissolution of their marriage, specifically, that appellant's net worth had declined from its September 27, 1973 value to $251,851, while Mr. Herget's had substantially increased. In *Martin v. Farber, supra,* we rejected the argument that the fairness or conscionability of an antenuptial agreement should be judged in light of circumstances occurring after the agreement was executed. Appellant attempts to distinguish *Martin,* which dealt with the validity of an antenuptial waiver by one spouse of any interest in property acquired by the other spouse during the marriage. She would have us treat a waiver of spousal support differently as some courts have. *Gross v. Gross,* 11 Ohio St.3d 99, 464 N.E.2d 500, 509 (1984); *Newman v. Newman,* 653 P.2d 728, 734 (Colo.1982). We decline to make that distinction. To do so, in our view, would constitute judicial interference with the right of competent parties to contract. As the Court of Appeals stated in *Gladding v. Langrall, Muir & Noppinger,* 285 Md. 210, 213, 401 A.2d 662 (1979):

> [W]hen determining whether an entire contract or any of its parts is so unconscionable as to justify its judicial rescission or cancellation, the matter will not be judged by hindsight but by the situation as it existed at the time the bargain was struck. (Citations omitted).

At the time of the agreement appellant was possessed of a substantial estate which she understandably wished to preserve for her children free from any claims of Mr. Herget or his creditors. Furthermore, Mr. Herget's promise to adopt her children, which he fulfilled, relieved her of the financial burden of supporting them entirely from her own resources. Those children, who have now reached majority, are now attending college at Mr. Herget's expense. Considering the situation of the parties, their ages, their respective holdings and income, and the parental obligations which Mr. Herget agreed to share with appellant,

the court was not clearly erroneous in concluding that the agreement was fair and equitable under the circumstances.

■ There was substantial evidence upon which the court found that the agreement was "entered into voluntarily, freely and with full knowledge of its meaning and effect" as required by *Hartz*.

Appellant fully understood the meaning and effect of a waiver of alimony. After her separation from her first husband, she executed a separation agreement with him on July 1, 1970. In that agreement she expressly waived "any and all claim for alimony, alimony pendente lite, maintenance and support, past, present and future." At the hearing on her uncontested divorce from her first husband she testified that she fully understood the meaning of that waiver. Furthermore, she lived with the consequences of that waiver until her marriage to Mr. Herget.

Furthermore, appellant demonstrated her understanding of another provision of the agreement in 1983 when the parties sold the home they had purchased soon after their marriage. She insisted that the net proceeds of the sale be divided between them in proportion to their respective cash contributions to the original purchase price. To support her argument she relied on a paragraph of the agreement governing the sale of any residential property owned by the parties in the event of their divorce.

Although appellant asserted that she was under duress when she executed the agreement, the only evidence she offered of that duress was that it was executed at a "hectic" time as she prepared for her marriage to Mr. Herget. That is hardly the type of duress which permits the avoidance of a contract. *Blum v. Blum*, 59 Md.App. 584, 595, 477 A.2d 289 (1984).

When the agreement was signed, appellant was nearing her 26th birthday. She had successfully invested and preserved an inheritance of approximately $500,000 which she had received at the age of 21. Although appellant only

received a high school education, the trial judge in the course of his written opinion commented:

[t]he Court was impressed with her sophistication, comprehension and ability to communicate. The court in fact believes Mrs. Herget to be an intelligent person.

Appellant's lack of independent counsel before executing the agreement must be weighed with the other evidence in determining whether the agreement was voluntarily and understandingly made. We cannot say that the trial judge was clearly erroneous in deciding that it was.

In sum, the trial judge properly applied the facts as he found them from the evidence to the criteria for determining the validity of an antenuptial agreement as set forth in *Hartz v. Hartz, supra.* We will not disturb his judgment that the agreement of the parties was valid and barred appellant's claim for alimony.

### Monetary Award

■ The antenuptial agreement of September 27, 1973, provides that appellant

releases and surrenders any and all claims she may have, now, or at the time of any termination of the proposed marriage between the parties, by divorce, death or otherwise, in any estate or property of Charles Edward Herget, Jr., now owned or hereafter acquired by him, including all rights to support, dower, thirds and halves, and all other rights and interests of every kind therein that shall arise out of the relation of the parties as husband and wife, and whether such rights and interests shall accrue during the lifetime of either of the parties, or at the time of or after her or his death, other than as specifically provided for herein or by will, trust agreement or other instrument.

The trial court ruled that by virtue of that provision appellant's claim for a monetary award pursuant to § 8–205 of the Family Law Code Ann. was barred. We disagree and explain.

In *Aetna Cas. & Sur. v. Ins. Comm'r*, 293 Md. 409, 420, 445 A.2d 14 (1982), the Court of Appeals pointed out:

In Maryland, under the objective law of contracts, a court, in construing an agreement, must first determine from the language of the agreement itself, what a reasonable person in the position of the parties would have meant at the time it was effectuated. *Anne Arundel County v. Crofton Corp.*, 286 Md. 666, 673, 410 A.2d 228, 232 (1980); *Ray v. Eurice*, 201 Md. 115, 127, 93 A.2d 272, 278–79 (1952). Where the language of the contract is unambiguous, its plain meaning will be given effect. There is no need for further construction. *Bernstein v. Kapneck*, 290 Md. 452, 459–60, 430 A.2d 602, 606 (1981); *Woodham v. Woodham*, 235 Md. 356, 360, 201 A.2d 674, 676 (1964).

When we so interpret the language of the above quoted provision from the agreement, it is apparent that appellant's release was limited "to any ... claim she may have, now, or at the time of any termination of the proposed marriage ... in any estate or property [of the appellee], now owned or hereafter acquired by him ... and all other rights and interests of every kind therein that shall arise out of the relation of the parties as husband and wife." As we pointed out in *Falise v. Falise*, 63 Md.App. 574, 580, 493 A.2d 385 (1985), the right to a monetary award pursuant to § 8–205 is not an interest in the estate or property of one's spouse. Rather, it is a remedy provided to divorcing spouses to seek financial compensation to cure inequity in the distribution of property acquired during the marriage according to how that property is titled. *Zandford v. Wiens*, 314 Md. 102, 106, 549 A.2d 13 (1988); *Niroo v. Niroo*, 313 Md. 226, 230–31, 545 A.2d 35 (1988).

Since the concept of the monetary award was not introduced in this State until 1978 when the General Assembly enacted the statute now codified as §§ 8–201 through 8–213 of the Family Law Code Ann. (the Marital Property Act), it is understandable that the parties to the antenuptial agreement in the case *sub judice* did not contemplate a monetary

award in 1973. This lack of contemplation of such a concept, however, is the very reason why appellant did not surrender her right to seek a monetary award which did not exist at the time she entered the antenuptial agreement. *Falise v. Falise, supra,* 63 Md.App. at 581, 493 A.2d 385, citing *Smith v. Smith,* 72 N.J. 350, 371 A.2d 1, 5–6, 371 A.2d 1 (1977).

## The Remaining Issues

Appellant also asserts that

1. The lower court erred in restricting the use and possession order to only eight months.

2. If this case is remanded on the merits it must be remanded also for reconsideration of the award of attorney's fees.

3. If this case is remanded on the merits the ruling of the lower court, striking parts of appellant's counter-complaint, must be reversed.

### 1.

█ In the judgment of divorce entered on October 7, 1987, appellant, who was granted custody of the minor child of the parties, Kelly Cathleen, was awarded exclusive use and possession of the family home until June 30, 1988, pursuant to §§ 8–206 through 8–213 of the Family Law Code Ann.[1] In fashioning a use and possession award, § 8–208(b) directs:

... the court shall consider each of the following factors:

(2) the interest of each party in continuing:

---

[1] We were assured by counsel at oral argument of this case that this issue is not moot. Appellant and Kelly Cathleen apparently continue to have exclusive use and possession of the home which the parties now own as tenants in common, pending an action instituted by appellee for sale of the property in lieu of partition.

(i) to use the family use personal property or any part of it, or to occupy or use the family home or any part of it as a dwelling place; or

(ii) to use the family use personal property or any part of it, or to occupy or use the family home or any part of it for the production of income; and

(3) any hardship imposed on the party whose interest in the family home or family use personal property is infringed on by an order issued under §§ 8–207 through 8–213 of this subtitle.

Section 8–209 permits the court to set the duration of the award although it may not exceed three years from the time that the court grants a limited or absolute divorce. Section 8–210. In making the award the interests of the minor children of the parties should be the principal concern of the court, but the practical needs of both parents should not be ignored. *Court v. Court*, 67 Md.App. 676, 683–85, 509 A.2d 693 (1986).

Kelly Cathleen Herget, born in December of 1974, was 12 years old at the time of the divorce and a seventh grade student at St. Paul's School. There was evidence that she had made a good adjustment to the separation of her parents on May 24, 1984. Since that time she had resided with the appellant in the family home.

The family home is a luxurious one, containing over 5,000 square feet of living space. Its value at the time of trial was estimated at $660,000.

During the two years prior to the divorce, the older children of the parties have been attending college and seldom spent any time at the family home. The expense of maintaining this property, including the debt service on the mortgage, totaled $70,000 per annum. Under the terms of the use and possession award, the appellee was ordered to bear that expense.

In an oral opinion explaining his decision with regard to the use and possession award, the court stated:

Let me deal with the use and possession at this time. Family Law Article 8–206 does provide that this court shall exercise its powers to enable any child of the family to continue to live in the environment and community that are familiar to the child and to provide for the continued occupancy of the family home and possession and use of the family use personal property by a party with custody of a child who has a need to live in that home.

It is written in the conjunctive, and I think the court is required to deal with both parts, both subsections 1 and 2 of 8–206, so in making a determination, I need to consider both.

Does she need to live in that home for a period of time? Yes. She needed to live in that home, and she needs to live in that home for another period of time. Does she need to live in it for the full three years? No, she doesn't.

She's attending Saint Paul's School. She's in a home that she has been accustomed to for most of her life or those kinds of surroundings, been in that home since it has been the property of Mr. Herget. That was her standard of living.

She's in the midst of a school year. Even though she has been there since May when the separation—May of '84 when the separation took place, and one might say that those three and a half years were a sufficient adjustment period—probably, that's a good argument, and a valid argument and one that I pretty well accept.

It is plenty of time to adjust to the separation and still be in the same environment so that you don't have the trauma of the separation of your parents and the movement to an unfamiliar surrounding, but I think it is appropriate in this case under the circumstances with her going to Saint Paul's and now having to move out, that June 30th, 1988 is the best time to bring that to an end, so the use and possession is until June 30th, 1988.

That gives her an opportunity to complete this school year and prepare herself. She's a young woman at 13

[sic] years of age that needs time to adjust to this, and it will also give the parties time not only to prepare to sell and find a buyer and Mrs. Herget time to find other living arrangements without having to hurry into it within the next 60 or 90 days, if a buyer is obtained in short order.

Considering the totality of the circumstances, we perceive no abuse of discretion by the court in limiting the award to June 30, 1988.

### 2.

Since we will be remanding this case for further proceedings on appellant's claim for a monetary award, what appellee should contribute to appellant's counsel fees for his services on this appeal and in connection with such further proceedings must be decided in the first instance by the trial court. That decision will depend, in part, on the appellant's ultimate success on her claim for a monetary award.

### 3.

After it determined that appellant's claims for alimony and a monetary award were barred by the antenuptial agreement, the court granted appellee's motion to strike certain paragraphs from appellant's counterclaim seeking that relief. The paragraphs in question alleged misconduct on appellee's part which contributed to the estrangement of the parties. Since we have vacated the court's order with regard to appellant's claim for a monetary award, those allegations are now material to the determination of whether appellant is entitled to a monetary award. Family Law Code Ann. § 8–205(a)(4). Consequently, we shall also vacate the order striking those paragraphs from the appellant's counterclaim.

JUDGMENT AFFIRMED IN PART, AND VACATED IN PART;

284

CASE REMANDED TO THE CIRCUIT COURT FOR
BALTIMORE COUNTY FOR FURTHER PROCEEDINGS;
COSTS TO BE DIVIDED BETWEEN THE PARTIES.