573 A.2d 798

**Charles E. HERGET, Jr.**

v.

**Mary Elizabeth HERGET.**

**No. 138, Sept. Term, 1988.**

Court of Appeals of Maryland.

May 25, 1990.

Motion for Reconsideration Denied June 29, 1990.

Francis B. Burch, Jr. (Glen K. Allen, Piper & Marbury, Baltimore, James G. Beach, Jr., Beach, Cadigan & Martin, Towson) all on brief, for petitioner.

Bruce A. Kaufman (Rosenthal and Kaufman, P.A., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL,* JJ.

McAULIFFE, Judge.

The major area of controversy in this divorce action concerns an antenuptial agreement that was executed in 1973. In an action filed in the Circuit Court for Baltimore County, the wife claimed that the agreement was invalid, reasoning that the husband did not make a full disclosure of his income and assets at the time the agreement was signed; that the agreement was not the wife's voluntary

---

* Blackwell, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

act; and, that the wife did not enter into the agreement with a full understanding of its meaning. Alternatively, she argued that if the agreement were valid, it did not have the effect of barring her claim to a monetary award—a right that arose by virtue of legislation enacted after the antenuptial agreement had been signed.

Judge J. William Hinkel carefully considered each of the wife's contentions concerning the alleged invalidity of the agreement, following the guidelines established by this Court in *Frey v. Frey*, 298 Md. 552, 563–64, 471 A.2d 705 (1984) and *Hartz v. Hartz*, 248 Md. 47, 234 A.2d 865 (1967). Judge Hinkel concluded that the agreement was valid. He also concluded that the plain language of the agreement evidenced the intent of both parties to exclude and protect the property of each from any and all claims of the other that might arise out of their relationship as husband and wife, and that their mutual release was sufficiently broad to protect either party from a claim for a monetary award.

The Court of Special Appeals upheld the trial judge's holding that the antenuptial agreement was valid, but held that the wife's claim for a monetary award was not barred by the terms of the agreement. *Herget v. Herget*, 77 Md.App. 268, 550 A.2d 382 (1988). We granted the husband's petition for certiorari to consider the effect of the antenuptial agreement on the wife's claim for a monetary award. We denied the wife's cross-petition, by which she sought further review of the determination that the agreement was valid.

At the time of execution of the antenuptial agreement, petitioner was a bachelor. Respondent, on the other hand, had been previously married, and had custody of her two daughters, who were seven and five years of age. Petitioner's assets at that time were valued at $1,604,000. Respondent's assets, consisting mainly of an investment portfolio, were valued at $690,000. Petitioner enjoyed an income of $50,039 and respondent received $28,650 in annual unearned income. Petitioner is a college graduate, who owned his own business. Respondent has a high school education and

no particular training for employment, but the trial judge described her as "intelligent," and said that he was impressed with her "sophistication, comprehension, and ability to communicate." The agreement, executed two days before the marriage, was prepared by petitioner's attorney.

> The agreement, recites the intent of the parties to:
> waive, relinquish and bar ... all ... rights and interests which she and he, respectively, as wife [or] husband ... may become entitled to, except as in this Agreement provided, with respect to any property, real or personal, now owned or hereafter acquired by the other party.

Further, it provided, in paragraph two, that:

> Mary Elizabeth Schaefer releases and surrenders any and all claims she may have, now, or at the time of any termination of the proposed marriage between the parties, by divorce, death or otherwise, in any estate or property of Charles Edward Herget, Jr., now owned or hereafter acquired by him, including all rights to support, dower, thirds and halves, and all other rights and interests of every kind therein that shall arise out of the relation of the parties as husband and wife, and whether such rights and interests shall accrue during the lifetime of either of the parties, or at the time of or after her or his death, other than as specifically provided for herein or by will, trust agreement or other instrument.

Paragraph three contained a reciprocal agreement on the part of the husband. Paragraph four then provided:

> Except as above provided, each of the parties hereby waives and releases unto the other party, her or his heirs, next of kin, personal representatives and assigns, all of her and his respective rights, interests and claims in and to said property of the other, to the end that neither of the parties shall obtain any right or interest to or in any property of the other by virtue of their marriage, but each, during her or his lifetime shall own or dispose of her or his property in the same manner as if the parties had never been married; and upon the death of either of the parties, the property of the deceased party shall be

distributed and title thereto shall devolve in the same manner as if the parties had never been married.

As we have noted, the trial judge found this agreement to be valid, and that issue is not before us. The sole issue with which we are concerned is whether the agreement bars the wife's claim for a monetary award.

■ An antenuptial agreement is a contract, subject to the general rules of contract interpretation. *In Re Marriage of Garrity/Bishton*, 181 Cal.App.3d 675, 226 Cal. Rptr. 485, 488 (1986); 3 *Lindey on Separation Agreements and Antenuptial Contracts*, § 90.14 (1989); S. Green and J. Long, *Marriage and Family Law Agreements*, § 2.07 at 118 (1984). It is well settled that Maryland follows the objective law of contracts. *General Motors Acceptance v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306 (1985). We explained, in *Aetna Cas. & Sur. v. Ins. Comm'r*, 293 Md. 409, 420, 445 A.2d 14 (1982), the procedure to be followed in interpreting a contract:

> In Maryland, under the objective law of contracts, a court, in construing an agreement, must first determine from the language of the agreement itself, what a reasonable person in the position of the parties would have meant at the time it was effectuated. Where the language of the contract is unambiguous, its plain meaning will be given effect. There is no need for further construction. (Citations omitted).

In the particular context of the case before us, our task is perhaps most aptly stated by the language of Judge Boyd in *Joffe v. Niagara Fire Ins. Co.*, 116 Md. 155, 160, 81 A. 281 (1911):

> Courts have no right to make new contracts for the parties, or ignore those already made by them simply to avoid seeming hardships.

■ The monetary award that the wife seeks is authorized by Maryland Code (1984, 1989 Cum.Supp.) Family Law Article, § 8–201 *et seq.* The concept of a monetary award is relatively new in Maryland, having been first adopted in

1978. Chapter 794, Laws of Maryland 1978. Its function is to provide a means for the adjustment of inequities that may result from distribution of certain property in accordance with the dictates of title. With one exception,[1] a divorce court in Maryland is not empowered to alter title to real or personal property held by the parties, or to directly divide or distribute that property in a way that is inconsistent with title. The court may, however, after giving consideration to factors enumerated by the legislature, enter a monetary award against one party and in favor of the other when that action is appropriate to adjust an inequity that would otherwise result from distribution, strictly in accordance with title, of property qualifying as "marital property." To the extent a monetary award is immediately due and owing, the court may enter a judgment reflecting it, thereby subjecting the property of the indebted party to lien and execution. Family Law Article, § 8–205(b).

In rejecting the husband's contention that the antenuptial agreement in this case was sufficiently broad to encompass a release of the future right to a monetary award, the Court of Special Appeals held that "the right to a monetary award ... is not an interest in the estate or property of one's spouse," and therefore is not covered by the language of the agreement. *Herget, supra,* 77 Md.App. at 279, 550 A.2d 382. In so holding, the court followed its earlier decision in *Falise v. Falise,* 63 Md.App. 574, 493 A.2d 385 (1985). In *Falise,* the intermediate appellate court held that a separation agreement entered into before 1978 (and before a reconciliation of the parties and the acquisition of additional marital property), by which each party agreed to relinquish all right, title, and interest in and to the property of the other then owned or thereafter acquired, did not effect a release of the right to a monetary award, for two reasons. First, the court said, "[w]e doubt that the subject

---

**1.** In 1986, trial courts were given authority to transfer ownership of an interest in certain pension, retirement, profit sharing, and deferred compensation plans from one party to another. Chapter 765, Laws of Maryland 1986, codified at Family Law Article, § 8–205(a).

agreement could affect the status of something which is neither an interest in real or personal property, *i.e.*, marital property." *Id.* at 580, 493 A.2d 385. Second, the court reasoned that the wife could not be regarded as having released a right that she did not have and could not have fairly anticipated at the time the agreement was signed. *Id.* at 580–81, 493 A.2d 385.

This second line of reasoning, that one cannot release a right that is unknown to that person at the time of the execution of the agreement, was at least mentioned, and may have been relied upon, by the Court of Special Appeals in this case.

> This lack of contemplation of such a concept, however, is the very reason why appellant did not surrender her right to seek a monetary award which did not exist at the time she entered the antenuptial agreement. *Falise v. Falise, supra,* 63 Md.App. at 581, 493 A.2d 385, citing *Smith v. Smith,* 72 N.J. 350, 371 A.2d 1, 5–6 (1977).

*Herget, supra,* 77 Md.App. at 280, 550 A.2d 382. In the case of *Smith v. Smith,* 72 N.J. 350, 371 A.2d 1, 6 (1977), cited by the Court of Special Appeals, the New Jersey Supreme Court held that:

> [I]n general, claims arising after the date of delivery of the instrument are not covered by it unless explicitly mentioned, since they would not appear to have been within the contemplation of the parties. *Bilotti v. Accurate Forming Corp.,* 39 N.J. 184, 203–05, 188 A.2d 24 (1963).

The holding in *Smith* was not, however, grounded on this reasoning. Rather, the New Jersey Supreme Court, following the established law of that state that a contract between husband and wife is unenforceable at law and may be enforced in equity only if found to be fair and equitable,[2] decided that only a property settlement agreement that was the substantial equivalent of an equitable distribution of

---

2. *Carlsen v. Carlsen,* 72 N.J. 363, 371 A.2d 8 (1977); *Edgerton v. Edgerton,* 203 N.J.Super. 160, 496 A.2d 366 (1985).

marital assets, and was itself fair and equitable, would operate as a bar to a claim for equitable distribution. *Id.* 371 A.2d at 7. Finding that the agreement in *Smith* dealt only with support, and had none of the characteristics of a property settlement agreement, the Court held that it was no bar to the wife's claim. Additionally, we note that the case cited in *Smith* in support of this contract principle, *Bilotti v. Accurate Forming Corp.*, 39 N.J. 184, 188 A.2d 24 (1963), espouses a somewhat different principle. In *Bilotti*, the Court said that "[c]laims or demands arising contemporaneously with delivery [of the release] are not discharged unless expressly embraced therein *or falling within the fair import of the terms employed.*" (Emphasis added). *Id.* 188 A.2d at 35.

In any event, the language of *Smith* relied upon by the Court of Special Appeals is contrary to established Maryland law. In *Bernstein v. Kapneck*, 290 Md. 452, 430 A.2d 602 (1981), this Court held that a broad general release of claims for injuries "known and unknown, and which have resulted or may in the future develop" sufficiently reflected the intent of the parties to release the defendant from any responsibility for a serious brain injury about which the parties neither knew or could reasonably have known at the time the release was executed. This Court said:

> While it is true that a growing number of courts (despite a clear and unambiguous release for consideration of all known and unknown, as well as foreseen and unforeseen, claims for personal injuries) permit repudiation by a releasor when unanticipated injuries surface subsequent to the contract's execution, we do not believe these decisions can withstand critical analysis and decline to follow them.

*Id.* 290 Md. at 456, 430 A.2d 602.

■ We reject the notion that the parties in the case before us were incapable of releasing a right that did not then exist. We also reject the argument that general language cannot effect a full release of a specific right, even a right that is unknown at the time the agreement is drawn.

We return then, to the first and more difficult question presented by this case—was the general language employed by the parties in this case sufficient to effect a mutual release of the then unknown right to a monetary award? We hold that it was.

The language of the release and waiver portions of the agreement was very broad. As the trial judge noted rhetorically, "what other anticipatory language could be used when the parties to an agreement wish to relinquish all future rights and interests known and unknown?"

In a preliminary paragraph of the agreement, the parties stated their intention to relinquish all rights and interests that each might subsequently acquire or become entitled to "with respect to any property, real or personal, now owned or hereafter acquired by the other party."

In paragraph two of the agreement, the wife released "any and all claims" she might then or thereafter have in any estate or property then owned or thereafter acquired by her husband, including "all ... rights and interests of every kind therein that shall arise out of the relation of the parties as husband and wife" except as otherwise provided in the agreement.

In paragraph three, the parties noted their intention to purchase a home, and agreed that their ownership rights in the equity value of the property would be in proportion to the funds each invested in the property, notwithstanding that they would hold it as tenants by the entirety.

In paragraph four, each party again released "all of her and his respective rights, interests and claims in and to [the] property of the other, to the end that neither of the parties shall obtain any right or interest to or in any property of the other by virtue of their marriage...."

In reversing the trial judge, the Court of Special Appeals reasoned that the agreement effected a release only of "an interest in the estate or property of one's spouse," and that the right to a monetary award is not such an interest. *Herget, supra,* 77 Md.App. at 279, 550 A.2d 382. As earlier

noted, this conclusion was grounded in part on that court's previous determination in *Falise, supra,* 63 Md.App. at 574, 493 A.2d 385, that the legislature had not granted one party a "legal interest" in the marital property of the other by the creation of the right to a monetary award. That analysis, we conclude, fails to give effect to the obvious intent of the parties, manifested by the language of the agreement viewed as a whole.

In one sense, the Court of Special Appeals was correct in finding that the right to a monetary award does not carry with it a "legal interest" in the other party's property. Nor does the right to a monetary award confer a specific "property right" in the sense of title. *See Head v. Head,* 759 F.2d 1172, 1174 (4th Cir.1985) (Maryland marital property act did not give wife a property interest in stock of her husband sufficient to constitute her a "seller" under the federal Securities Exchange Act of 1934 when she released, in a separation agreement, all claims against the stock).

In another sense, however, the approach taken by the Court of Special Appeals may be viewed as overly narrow. Certainly, under a Fourteenth Amendment due process analysis, the right to a monetary award properly would be characterized as a "property interest." *See generally,* L. Tribe, *American Constitutional Law* § 10–9 (2d ed. 1988). Within the specific context of the Maryland marital property act, this Court has approved a broad definition of the term "property":

> The term property, "when considered in a broad sense, is a term of wide and rather comprehensive signification.... It has been stated that the term embraces everything which has exchangeable value or goes to make up a man's wealth—every interest or estate which the law regards of sufficient value for judicial recognition."

*Deering v. Deering,* 292 Md. 115, 125, 437 A.2d 883 (1981), *quoting Diffendall v. Diffendall,* 239 Md. 32, 36, 209 A.2d 914 (1965). *See Niroo v. Niroo,* 313 Md. 226, 232–33, 545 A.2d 35 (1988). We think it clear that in referring to

mutual releases of all claims of rights or interests that each party might have or might thereafter acquire in and to any property of the other, these parties were using the term "property" in its broad sense. They manifested an unequivocal mutual intent to free all of their estate and property from any claims by the other that might arise by virtue of their marriage. If a monetary award is now allowed, that intent will be frustrated, because the award will have to be paid from the property, whether cash, personalty, or realty, of the party against whom the award is made.

In practical terms, a claim for a monetary award is a claim against the property of the person from whom the award is sought. The very purpose of a monetary award is to equitably distribute the property of the parties—a point that is made clear by the following passage from the report of the commission recommending the adoption of the marital property act:

> The Commission's approach, in summary, has been to establish the concept of "marital property" as being all that property which was acquired by the parties during their marriage and giving the Court the power to consider its total value *in disposition of the property of the parties,* to recognize that special consideration from a family point of view needs to be given to the real property which constitutes the family home and the personal property which is devoted primarily to family use, to recognize non-monetary as well as monetary contributions of the parties to the marriage, and by these measures *to accomplish a truly equitable disposition of property* upon divorce or annulment without the turbulent upheaval that would come with a total disregard of title. (Emphasis added).

Report of The Governor's Commission on Domestic Relations Laws, at 5 (January, 1978).

Had the General Assembly decided to follow a different course, to permit equitable distribution of property by the actual division of that property, it is doubtful that anyone would suggest that the agreement in this case did not

afford full protection from such a claim. The decision by the legislature to accomplish an equitable disposition of property through the use of a monetary award should not produce a different result.

We conclude that the intent of the parties manifested by their antenuptial agreement was to prevent the very type of claim that is now being made. The trial judge properly found that the wife's claim for a monetary award was barred.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.

ADKINS, Judge, dissenting.

The majority holds that Mary Elizabeth Herget's claim for a monetary award from her former husband, Charles E. Herget, Jr., is barred by an antenuptial agreement. In the course of reaching that result it recognizes that " 'a court, in construing an agreement, must first determine from the language of the agreement itself, what a reasonable person in the position of the parties would have meant at the time it was effectuated.' " Maj. op. at 470 (quoting *Aetna Cas. & Sur. v. Ins. Comm'r*, 293 Md. 409, 420, 445 A.2d 14, 19 (1982)). The majority concludes "that the intent of the parties manifested by their antenuptial agreement was to prevent the very type of claim that is now being made." Maj. op. at 477. I respectfully dissent because I cannot agree that an antenuptial agreement that makes reference only to property or interests therein manifests an intent to abandon a claim for a remedy that is neither property nor an interest in property; a remedy that was, moreover, utterly unknown to Maryland law when the antenuptial agreement was executed.

The Hergets executed the agreement on 27 September 1973. The agreement stated their intent to mutually "waive, relinquish and bar ... all ... rights and interests ... with respect to any property, real or personal, now owned or hereafter acquired by the other party." The future Ms. Herget also released and surrendered

> any and all claims she may have, now, or at the time of any termination of the proposed marriage between the parties, ... in any estate or property of [Mr. Herget], now owned or hereafter acquired by him, including all rights to support, dower, thirds and halves, and all other rights and interests of every kind therein that shall arise out of the relation of the parties as husband and wife....

There was a reciprocal undertaking on the part of Mr. Herget. Each party also waived and released "unto the other party ... all of her and his respective rights, interests and claims in and to said property of the other...."

The plain language of the agreement dealt with property and interests in property; those words are repeated numerous times. There is also a release or surrender of "rights to support." But the agreement does not address the possibility of a then non-existent equitable monetary adjustment between the parties, which is something quite different from conventional "support" or conventional alimony. Nor does it purport to waive any possible remedy one spouse-to-be might have against the other.

Almost two-and-a-half years after the antenuptial agreement was signed, the Governor's Commission on Domestic Relations Laws was created. Some two years after that, in January, 1978, the Commission submitted its report, in which it recommended the creation of the concept of marital property and the remedy of a monetary award as a means of curing "the perceived existing inequity in present Maryland law governing the disposition of real and personal property upon divorce or annulment...." *Report of the Governor's Commission on Domestic Relations Laws*, at 2 (1978). That recommendation was embodied in Chapter 794, Laws of 1978. It is now set forth in §§ 8–201 *et seq.* of the

Family Law Article, Maryland Code (1984, 1989 Cum.Supp.). The purpose of the monetary award is to permit a court to make an equitable monetary adjustment after identifying and valuing "marital property" and considering many factors, including both monetary and non-monetary contributions to the marriage, and the economic circumstances of each party. *Queen v. Queen*, 308 Md. 574, 577, 521 A.2d 320, 322 (1987); *Unkle v. Unkle*, 305 Md. 587, 595, 505 A.2d 849, 853 (1986), and cases there cited.

Marital property is not property in the conventional sense. *Falise v. Falise*, 63 Md.App. 574, 580, 493 A.2d 385, 388 (1985). It is a device created by the legislature to correct a potential inequity that may arise upon the dissolution of a marriage. The "only function of 'marital property' is to form a base for a 'monetary award.'" *Id.*

> What is more to the point,
>
> the right to a monetary award ... is not an interest in the estate or property of one's spouse. Rather, it is a remedy provided to divorcing spouses to seek financial compensation to cure inequity in the distribution of property acquired during the marriage according to how that property is titled.

*Watson v. Watson*, 77 Md.App. 622, 634, 551 A.2d 505, 511 (1989). *See also Zandford v. Wiens*, 314 Md. 102, 106, 549 A.2d 13, 14–15 (1988); *Niroo v. Niroo*, 313 Md. 226, 230–231, 545 A.2d 35, 37 (1988).

When the majority decides that the Hergets' antenuptial agreement bars a monetary award, it rewrites the contract for the parties, despite the majority's recognition that "[c]ourts have no right to make new contracts for the parties.'" Maj. op. at 470 (quoting *Joffe v. Niagara Fire Ins. Co.*, 116 Md. 155, 160, 81 A. 281, 282 (1911)). It expands their waivers and relinquishments beyond property and interests in property, to encompass a remedy unknown to Maryland law in September 1973.

To rewrite the antenuptial agreement for the parties is bad enough. Even worse is the fact that, despite its lip service to the objective law of contracts, the majority actually abandons that doctrine. The doctrine, of course, is based on the notion that, ordinarily, a contract is not read to effectuate the subjective intent of a party. Instead, at least in the absence of ambiguity, it is viewed through the eyes of a fictitious reasonable person, and given the meaning that person would ascribe to its language in light of the circumstances that existed when the contract was executed. *See* S. Williston, *Williston on Contracts,* § 1825, at 473 (3d ed. 1972) (rules of interpretation of releases are subordinate to "broad rule that the intention which the words of the instrument express in light of the circumstances existing at the time shall prevail").

When this contract was executed, as I have pointed out, the concept of "monetary award" was unheard of in Maryland. How could the Hergets have intended an antenuptial agreement dealing with property interests to bar a then non-existent remedy? *See Globe American Casualty v. Chung,* 76 Md.App. 524, 543, 547 A.2d 654, 663 (1988) ("release ... covers only such matters ... within the contemplation of the parties when the release was given"), *cert. denied,* 314 Md. 508, 551 A.2d 874 (1989). I agree with the Court of Special Appeals:

> Since the concept of the monetary award was not introduced in this State until 1978 ... it is understandable that the parties to the antenuptial agreement in the case *sub judice* did not contemplate a monetary award in 1973. This lack of contemplation of such a concept, however, is the very reason why [Ms. Herget] did not surrender her right to seek a monetary award which did not exist at the time she entered the antenuptial agreement.

*Herget v. Herget,* 77 Md.App. 268, 279–280, 550 A.2d 382, 387 (1988).

This analysis in no way runs afoul of *Bernstein v. Kapneck,* 290 Md. 452, 430 A.2d 602 (1981), upon which the majority so heavily relies. *Bernstein* holds that a general

release of claims for injuries "known or unknown, and which have resulted or may in the future develop" manifested an intent to release the defendant from responsibility for a serious brain injury of which the parties neither knew nor should have known when the release was executed. 290 Md. at 464, 430 A.2d at 609. *Bernstein*, however, dealt with a factual question: an unanticipated change in condition of the injured person. Human experience tells us that injuries sometimes have consequences that do not show themselves for long periods of time. Thus, it is not unforeseeable that such a development may occur. One may be able to conclude, given that foreseeability, that a release like the one in *Bernstein* is intended to extend to the unanticipated medical eventuality.

The *Bernstein* rule is a harsh one, but not necessarily unfair. When one releases claims for injuries "known or unknown, and which have resulted or may in the future develop" one does so in the light of one's experience. It is reasonably foreseeable that one may be giving up a presently unknown claim; the language of the *Bernstein* release expressly so stated.

Thus, had Mr. Herget suddenly and unexpectedly undergone a vast increase in wealth, as by winning a large lottery jackpot, Ms. Herget would not be heard to say that she could assert some claim against the unanticipated new property. That sort of eventuality is also foreseeable, as we know from human experience.

It is foreseeable, too, that a legislature may change the law. But a waiver based on factual matters within a party's reasonable contemplation is entirely different from one based on the extent to which a lay person's imagination may be held to predict future legislative ingenuity.

It asks too much to assume that a lay person in 1973 could reasonably foresee the creation of the monetary award concept in 1978. "What the parties did not know at the time of execution may illuminate their intent at that time." *Morgan v. Cohen*, 309 Md. 304, 318–319, 523 A.2d

1003, 1010 (1987). In 1973, the Hergets knew (or could have been advised) about property rights. They could not possibly have known (or been advised) about the future concept of monetary awards. They were not required to foresee the creation of that concept by the General Assembly. As the Supreme Court of New Jersey said in quite similar circumstances, a spouse "cannot be regarded as having released a right which she did not have and could not fairly have anticipated." *Smith v. Smith*, 72 N.J. 350, 359, 371 A.2d 1, 6 (1977).

I do not believe the antenuptial agreement covered the monetary award remedy. I would affirm the judgment of the Court of Special Appeals.

Judge ELDRIDGE has authorized me to state that he concurs with the views expressed herein.